# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20475

JACOB ESTRADA,

>Plaintiff - Appellant

v.

JOHN FRANCIS HEALEY, JR.; MARK HAROLD HANNA,

>Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**
April 27, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-92

Before STEWART, Chief Judge, and JONES and DENNIS, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Jacob Estrada ("Estrada") is a former Texas inmate who pleaded guilty to possession of a controlled substance and was sentenced to an eight-year prison term. Estrada alleges that following his conviction, the district attorney's office that prosecuted him—the Fort Bend County, Texas, District Attorney's Office—learned of exculpatory evidence in his case but failed to disclose it to him in a timely fashion. The State of Texas ultimately

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

overturned Estrada's conviction in habeas corpus proceedings based on that exculpatory evidence; this suit under 42 U.S.C. § 1983 followed.

Citing *Brady v. Maryland*, 373 U.S. 83 (1963), Estrada claims on appeal that Defendants-Appellees District Attorney John Healey, Jr. ("Healey") and Assistant District Attorney Mark Hanna ("Hanna") violated his due process rights by allegedly withholding exculpatory evidence discovered after his conviction and therefore delaying his release from prison. The district court dismissed Estrada's due process claim, concluding, *inter alia*, that Hanna and Healey were entitled to qualified immunity. Because the Supreme Court has declined to extend *Brady* to the post-conviction context and Estrada fails to otherwise demonstrate a violation of a clearly established right, we AFFIRM.

## I.

This case concerns the actions of the Fort Bend County, Texas, District Attorney's Office in response to revelations of the misconduct of Jonathan Salvador ("Salvador"), a forensic scientist formerly with the Texas Department of Public Safety ("DPS"). Salvador was responsible for testing drug samples from criminal suspects but was caught falsifying samples in early 2012. Estrada's 2007 prosecution for possession of a controlled substance was amongst the cases potentially impacted by Salvador's misconduct—Salvador prepared the lab report in Estrada's case and the parties relied upon this report during plea bargaining. The district court's opinion provides a thorough recitation of the facts alleged in the complaint; here we briefly recount the portions relevant to this appeal.

DPS first became aware that Salvador had falsified test results in a criminal case in February 2012, and it subsequently notified district attorney's offices throughout Texas. DPS stated that it would re-analyze the evidence in certain cases. Hanna and Healey received this communication but did not notify Estrada. Later, in April 2012, DPS notified district attorney's offices

potentially affected by Salvador's misconduct—including the Fort Bend County District Attorney's Office—that: (1) it had found multiple instances of Salvador's misconduct; (2) it deemed it "prudent to review his entire body of work"; and (3) it e-mailed each office a spreadsheet of the criminal defendants whose cases were affected; this spreadsheet included Estrada's case. Though some district attorney's offices promptly notified the affected individuals, the Fort Bend County District Attorney's Office chose not to and instead sought to have the samples retested. Estrada's sample, however, was destroyed in July 2012 pursuant to a judicial order.[1]

On July 24, 2012, DPS provided the Fort Bend County District Attorney's Office with a report issued by the DPS Office of the Inspector General. The report explained that Salvador had been fired by DPS for "dry-labbing"—essentially, Salvador reported finding contraband in criminal cases without actually conducting an analysis of the samples provided to him. No one from the Fort Bend County District Attorney's Office apprised Estrada of the findings in this report.

After a March 6, 2013, decision by the Texas Court of Criminal Appeals ("TCCA") granted habeas relief to a criminal defendant whose case was affected by Salvador's misconduct, defendant Healey contacted Estrada for the first time and sent two letters on March 14: one to Estrada advising him of the TCCA opinion, but not explaining that the evidence in his case had been destroyed, and one to Estrada's trial counsel allegedly stating that Healey's office requested that DPS retest the evidence in Estrada's case and that they would forward the results once received. In April 2013, a report from the Texas Forensic Science Commission publicly condemning Salvador's actions led to

---

[1] The order to destroy the evidence in Estrada's case was issued in October 2011, i.e., before the revelations about Salvador's misconduct came to light.

local media coverage of Salvador's misconduct. During the following months, the Fort Bend County District Attorney's Office allegedly took no action to notify any affected criminal defendants and would not release the names of those affected to the local criminal defense bar. The Fort Bend County Criminal Defense Association was eventually able to obtain the names of the affected criminal defendants in July 2013, and in August 2013, Estrada was provided appointed counsel.

Estrada filed a petition for a writ of habeas corpus in state court in October 2013. Healey's office initially filed an answer opposing habeas relief, but in December 2013 reversed course and indicated that it would not oppose relief "in the interest of judicial economy." In February 2014, however, the TCCA remanded the case to the trial court due to the State's lack of specificity in not opposing habeas relief. After proceedings and fact-finding at the trial court, in June 2014 the TCCA issued an opinion granting Estrada habeas relief and overturning his conviction.

Estrada then filed this § 1983 action against Hanna and Healey in their individual and official capacities in state court, which they timely removed to federal court. Estrada alleged that the defendants violated his rights under the Due Process Clause and Eighth Amendment by failing to disclose the exculpatory evidence of Salvador's misconduct in a timely fashion in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Hanna and Healey moved to dismiss, asserting Eleventh Amendment immunity as well as absolute and qualified immunity. The district court granted the motion, holding that Supreme Court precedent dictates that there is no prosecutorial duty under *Brady* to disclose exculpatory evidence in the post-conviction context. Consequently, the district court held that Healey and Hanna were entitled to qualified immunity as to Estrada's individual-capacity claims, and, in the alternative, that they were entitled to absolute prosecutorial immunity.

4

No. 15-20475

Finally, the court held that, whether construed as an action against the State of Texas, the Fort Bend County District Attorney's Office, or Fort Bend County itself, Estrada's official capacity claims were not colorable.

On appeal, Estrada challenges only the district court's conclusions regarding Healey's and Hanna's entitlement to absolute and qualified immunity on his due process claim.[2] He argues that Healey and Hanna (1) are not entitled to qualified immunity because *Brady* and its progeny establish a prosecutorial duty to disclose exculpatory evidence that extends to the post-conviction context and their derivation from this clearly established law was objectively unreasonable, (2) are not entitled to absolute prosecutorial immunity because they were not engaging in prosecutorial activity at the time of the alleged violation, and (3) waived absolute and qualified immunity by removing the case from state court to federal court.

## II.

Although the facts alleged in the amended complaint are troubling, we hold that Healey and Hanna are entitled to qualified immunity. We therefore need not address Estrada's arguments regarding absolute prosecutorial immunity.

The doctrine of qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The basic steps of our qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Morgan*

---

[2] Estrada does not raise the dismissal of his Eighth Amendment claim on appeal.

No. 15-20475

*v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)). "We may address either prong first." *Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015).

Estrada fails to establish that Healey or Hanna violated a "clearly established" right. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (brackets and internal quotation marks omitted). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al–Kidd*, 131 S. Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083.

Estrada cites no case law establishing a due process right to the timely disclosure of exculpatory evidence discovered after his conviction, i.e., Salvador's misconduct. Instead, he relies exclusively on the rule announced in *Brady* that due process requires a prosecutor to disclose material, exculpatory evidence to a defendant before trial. *See Brady,* 373 U.S. at 87. His argument is undercut by the Supreme Court's decision in *District Attorney's Office for the Third Judicial District v. Osborne*, which explicitly declined to extend *Brady*'s pre-trial protections to the post-conviction context. 557 U.S. 52, 68–69 (2009).[3]

---

[3] In his appellate brief, Estrada alludes to Healey and Hanna having knowledge of Salvador's misconduct prior to his conviction. However, he does not pursue this argument on appeal—instead, he states that "[t]he issue in this case is whether a prosecutor has a duty under *Brady* to disclose *Brady* material to a defendant after a conviction." And, regardless, even if Hanna and Healey were aware of the exculpatory evidence of Salvador's misconduct pre-conviction, Estrada waived his right to raise a *Brady* violation when he pleaded guilty. *See United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) ("[A] guilty plea precludes the defendant from asserting a *Brady* violation."); *Matthew v. Johnson*, 201 F.3d 353, 361–62 (5th Cir. 2000) ("Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure

In noting that "*Brady* is the wrong framework" for analyzing a criminal defendant's liberty interest in obtaining exculpatory evidence in the post-conviction context, the Court stated that the pertinent inquiry is whether a State's post-conviction procedures are "fundamentally inadequate to vindicate the substantive rights provided." *Id.* Estrada has not advanced such a claim, and, indeed, Estrada's rights were vindicated when Texas's post-conviction process resulted in overturning his conviction and his release from prison.

Although Estrada takes great pains to distinguish *Osborne* and press his due process argument under *Brady,* he points to no existing precedent "plac[ing] the . . . constitutional question beyond debate."[4] *al–Kidd,* 131 S. Ct. at 2083. Appellees are therefore entitled to qualified immunity.[5]

## III.

The district court's judgment is AFFIRMED.

---

of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation.").

[4] In the portion of his brief discussing absolute immunity, Estrada does cite two cases analyzing efforts by prosecutors to suppress potentially exculpatory evidence in the post-conviction context; however, neither case supports Estrada's qualified immunity argument. In *Houston v. Partee*, the Seventh Circuit held that prosecutors who discovered exculpatory evidence while a criminal appeal was pending were not entitled to absolute immunity but noted that the prosecutors were entitled to assert qualified immunity on remand. 978 F.2d 362, 368–69 (7th Cir. 1992). In *Peterson v. Bernardi*, the court held that a prosecutor who opposed post-conviction DNA evidence testing was entitled to qualified immunity. 719 F. Supp. 2d 419, 437–38 (D.N.J. 2010).

[5] Estrada also makes the strange argument that Hanna and Healey waived their entitlement to qualified immunity by removing the case from state court to federal court. This contention warrants little discussion. In support of his argument, Estrada cites the Supreme Court's statement in *Lapides v. Board of Regents of University System of Georgia* "that a State's voluntary appearance in federal court amount[s] to a waiver of its Eleventh Amendment immunity." 535 U.S. 613, 619 (2002). Estrada erroneously confuses a state's sovereign immunity under the Eleventh Amendment and a government official's qualified immunity from individual suit.